UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID LORET,

                                    Plaintiff,

                                                                    DECISION AND ORDER

                                                                    07-CV-6392L

                    v.

DIRECTOR DONALD SELSKY,
INSPECTOR GENERAL G. KENDRA,
SUPERINTENDENT JAMES CONWAY,
LT. DIXON, Hearing Officer,
SGT. CAROLL,
CORRECTIONAL OFFICER VALENTINO,

                                    Defendants.
_____

        Plaintiff, David Loret, appearing *pro se*, commenced this action under 42 U.S.C. § 1983.

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services

("DOCS"), alleges that his constitutional rights have been violated in a number of respects in

connection with certain incidents that occurred in connection with a misbehavior report that was

issued against him in February 2006, while plaintiff was confined at Wyoming Correctional Facility.

Both plaintiff and defendants have moved for summary judgment.

**BACKGROUND**

On February 14, 2006, a misbehavior report was issued against plaintiff.  The violations charged in that report arose from the delivery of a package addressed to plaintiff, which had been received at Wyoming twenty-two months earlier, on May 18, 2004.  *See* Plaintiff's Statement of Undisputed Facts (Dkt. #15) ¶ 1; Defendants' Rule 56 Statement (Dkt. #17) ¶¶ 1, 3.  The reasons for the long delay between the receipt of the package and the issuance of the misbehavior report are not apparent from the record before me.

Upon its delivery, the package was opened by DOCS employees, and was found to contain a quantity of marijuana and some small bottles of liquor.  The package, which according to defendants was later identified as having been sent to plaintiff by his adult son, was immediately confiscated.

That same day, DOCS officers questioned plaintiff about the package.  Plaintiff, who disclaimed all prior knowledge of the package, was also placed in the Special Housing Unit ("SHU") at Wyoming, where he remained for about four days, after which he was returned to general population.  It appears to be undisputed that plaintiff never signed for, or had possession of, the package or its contents.

Apparently nothing further happened in connection with the matter until the issuance of the misbehavior report nearly two years later.  Plaintiff was charged with four violations involving conspiracy to smuggle contraband into the facility, as well as "telephone abuse."

A Tier III hearing was conducted before defendant Lt. Dixon, beginning on February 18, 2006. Plaintiff testified at the hearing. At the conclusion of the hearing, Lt. Dixon found plaintiff guilty of all four charges against him. He was sentenced to twenty-four months' confinement in SHU and loss of privileges.

On administrative appeal, defendant Donald Selsky, the DOCS Director of the Special Housing/Inmate Disciplinary Program, affirmed the determination of guilt, but reduced the sentence from twenty-four to twelve months. Plaintiff then brought an Article 78 proceeding in state court, and on March 16, 2007, the Appellate Division, Fourth Department, annulled the determination of guilt, based on the unexplained delay in the issuance of the misbehavior report, which the court found had violated plaintiff's due process rights. *See Loret v. Goord*, 38 A.D.3d 1267, 1268-69 (4th Dep't 2007) (citing *Di Rose v. New York State DOCS*, 276 A.D.2d 842, 843 (3d Dep't 2000)). By that point, however, plaintiff had served his entire twelve-month sentence.[1]

Plaintiff filed the complaint in this action on August 13, 2007. He asserts five claims alleging that his procedural due process rights were violated in connection with the Tier III hearing before defendant Dixon.

---

[1]In reaching its determination, the Appellate Division stated that "[w]hile significant events occurred during the 21-month period between the time of the acts underlying the charges and the date on which the misbehavior report was issued, i.e., petitioner was charged, tried and convicted of a previously unsolved murder and was sentenced to a term of imprisonment of 25 years to life, there was still an unexplained seven-month delay between the date of the murder conviction and the issuance of the misbehavior report." 38 A.D.2d at 1268.

**DISCUSSION**

In support of their motion for summary judgment, defendants contend that the record establishes that plaintiff was not denied due process. Defendants point to evidence showing that plaintiff was given more than twenty-four hours' notice of the charges against him, and that he was allowed to testify and present evidence at the hearing.[2]

In support of his motion, and in response to defendants' motion, plaintiff asserts that he was wrongfully denied certain evidence at the Tier III hearing, particularly a tape or transcript of an alleged telephone conversation between him and his son. That conversation formed a part of the basis for the charges against plaintiff. Dixon denied plaintiff's request for that evidence on the ground that disclosure of the contents of that recording would "jeopardize[] ... institutional goals and safety," Dkt. #20 at 59, although he did not articulate how it would do so. Plaintiff also contends that his rights were violated by Dixon's failure to call as a witness the officer who actually opened the package in question, and by the delay in filing the misbehavior report.

After reviewing the record, I conclude that both plaintiff's and defendants' motions for summary judgment must be denied, with one exception, as explained below. The record before me is simply too sparse for the Court to resolve certain issues of material fact bearing upon plaintiff's claims.

_____

[2]At least for purposes of the pending motions, defendants do not dispute that plaintiff has established the existence of a protected liberty interest, based on his 12 months' SHU confinement. *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

Although an inmate facing disciplinary charges is not entitled to the full panoply of due process rights that one is entitled to in a criminal trial, there are nevertheless certain minimum procedural safeguards that must be provided under the Constitution.  For example, an inmate subject to a disciplinary hearing is entitled to:  "(1) advance written notice of the charges against him, (2) the opportunity to call witnesses and present documentary evidence in his defense and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y. 2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

The Second Circuit has also "held that, at a minimum, a prisoner is entitled to be 'confronted with the accusation, informed of the evidence against him ... and afforded a reasonable opportunity to explain his actions.'"  *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (quoting *Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971)).  *See also Gates v. Selsky*, No. 02 CV 496, 2005 WL 2136914, at *10-*11 (W.D.N.Y. Sept. 2, 2005) ("Inmates have a well established due process right, at a minimum, to knowing the evidence that confronts them in a disciplinary hearing," since "such disclosure affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence") (quoting *Sira v. Morton*, 380 F.2d 57, 74 (2d Cir. 2004)).

Although that right can give way to legitimate concerns over institutional safety, *see Francis*, 891 F.2d at 47-48, an inmate is still entitled to *some* explanation of the basis for a hearing officer's denial of the inmate's request for certain witnesses or items of evidence.  Simply invoking security concerns, with no articulation at all of how institutional security could be jeopardized or compromised by turning over the evidence in question, does not meet that minimum constitutional standard.  *See*, *e.g.*, *Benitez v. Straley*, No. 01 Civ. 0181, 2006 WL 5400078, at *16 (S.D.N.Y. Feb.

16, 2006) (DOCS defendants were not entitled to qualified immunity where they "ha[d] not presented any explanation for the exclusion of witnesses, certain lines of questioning, or pieces of evidence"); *Gates*, 2005 WL 2136914, at *11 (denying qualified immunity to hearing officer where officer "did not present a contemporaneous. reason for not disclosing [the] documents" that inmate had requested).

In the case at bar, Dixon, in denying plaintiff's request for a copy of the telephone conversation between him and his son, simply stated that "it jeopardizes ... institutional goals and safety." Dkt. #20 at 59. Dixon did not explain the basis for that statement, and it is not apparent to the Court, on this record (which does not include any affidavit by Dixon himself), how he reached that conclusion.

Presumably, of course, plaintiff would have had first-hand knowledge of what was said in the telephone conversation between him and his son, but given the length of time that had passed between the underlying events and the Tier III hearing, his memory of that conversation would almost certainly have faded, making it difficult for him to refute the investigating officer's testimony that plaintiff had telephoned his son to arrange for the contraband in question to be mailed to plaintiff. In any event, absent countervailing considerations of security or other legitimate institutional concerns, due process would seem to require that plaintiff be given more than simply an officer's statement that he had listened to a telephone conversation between plaintiff and his son, and that he, the officer, had concluded from that conversation that plaintiff had used the phone system to arrange for the delivery of the contraband.[3]

---

[3]The investigating officer, Officer Kendra, also seemed at the hearing to be less than
(continued...)

At the same time, however, the record does not so clearly establish that plaintiff's constitutional rights were violated in this regard that the Court can enter summary judgment for plaintiff. Dixon's failure to explain the reasoning behind his statement about his concerns over "institutional goals and safety" does not mean that there were no such valid concerns. The constitutional violation here, if there was one, lay not simply in Dixon's failure to articulate more fully the basis for his denial of plaintiff's request for the audiotape or transcript, but in the denial itself. Whether that denial violated plaintiff's constitutional rights depends on whether there were legitimate security reasons for the denial, which cannot be determined on the record before me. I conclude, therefore, that neither side is entitled to summary judgment on this claim.

Although the denial of plaintiff's request concerning the telephone conversation appears to present the most serious constitutional concerns, I deny the motions as to plaintiff's other claims as well. For the reasons stated, the relevant facts are simply not clear at this juncture.[4]

I also note that in their motion, defendants have done little more than recite, in boilerplate fashion, the general principles applicable to prisoner procedural due process claims, followed by a

---

[3](...continued)
certain that he *had* listened to the alleged conversation. When asked by Dixon whether he had "listen[ed] to any phone conversations concerning this matter," Kendra responded, "Does it say I did [on Kendra's written report]?" After Dixon read to Kendra the portion of Kendra's report alleging that plaintiff had "abused the inmate phone system," Kendra stated, "Okay. Yes." Plaintiff then asked, "So [Kendra]'s saying that he did [listen to the phone conversation]?" Dixon answered, "He's responded to that. Next question." Dkt. #20 at 51. Kendra never testified about what he actually heard in the phone conversation.

[4]With respect to plaintiff's claim concerning the delay between the incident and the Tier III hearing, I note that the state court's determination that this delay violated plaintiff's due process rights has no preclusive effect in this case, *see Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir. 1988); *Foxworth v. Selsky*, No. 95-CV-1168, 1998 WL 59448, at *4 (N.D.N.Y. Feb. 9, 1998),

conclusory assertion that plaintiff received adequate notice of, and an opportunity to defend against, the charges against him.  Although it may eventually be demonstrated that the facts do not support some of plaintiff's § 1983 claims, the record as it now stands is simply inadequate for the Court to make such findings as a matter of law.

I do, however, grant summary judgment as to defendant James Conway, the Superintendent of Wyoming Correctional Facility at the time of the relevant events.  The record here shows that Conway was not personally involved in the alleged constitutional deprivations.

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  That requirement may be satisfied by alleging facts showing that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicated that constitutional acts were occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff has demonstrated no such facts here.  He has alleged virtually nothing about Conway except that Conway appointed Dixon to conduct plaintiff's Tier III hearing.  That is plainly

insufficient to hold Conway personally liable for any constitutional deprivations that may have occurred here.

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #15) is denied.

Defendants' motion for summary judgment (Dkt. #16) is granted in part and denied in part. Summary judgment is granted in favor of defendant James Conway, and plaintiff's claims against him are dismissed.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 26, 2009.